CLERK U.S. FILED BANKRUPTCY COURT
06 FEB -8 AM 10:59
NORTHERN DISTRICT OF OHIO CLEVELAND

UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF OHIO

| | | |
|---|---|---|
| In re: | ) | Chapter 7 |
| | ) | |
| WANDA GORDON and ARTRICE GORDON, | ) | Case No. 05-17767 |
| | ) | |
| | ) | Judge Arthur I. Harris |
| Debtors. | ) | |

MEMORANDUM OF OPINION

Before the Court is an order upon creditor Good Deal Used Cars, a business owned by Yolanda Abouelhana, to show cause why it should not be held in civil contempt and/or liable for damages for violation of the automatic stay for repossessing a vehicle postpetition and for refusing to return the vehicle. For the reasons that follow, the Court finds that Abouelhana, doing business as Good Deal Used Cars, has willfully violated the automatic stay by refusing to return the vehicle after receiving notice of the Gordons' bankruptcy. Abouelhana shall pay actual damages, including costs and attorneys' fees, in an amount to be determined. If the vehicle is returned promptly upon receipt of this memorandum of opinion and order, the Court will decline to award punitive damages.

JURISDICTION

This is a core proceeding under 28 U.S.C. § 157(b)(2)(A) and (O). The Court has jurisdiction over core proceedings under 28 U.S.C. §§ 1334 and 157(a) and Local General Order No. 84, entered on July 16, 1984, by the United States

District Court for the Northern District of Ohio.

FINDINGS OF FACT

On January 31, 2006, the Court heard testimony from Wanda and Artrice Gordon and from Yolanda Abouelhana. The debtors presented their case through their own testimony, cross-examination of Abouelhana, and exhibits. Abouelhana presented her case through her own testimony, cross-examination of the Gordons, and exhibits. Much of the testimony was conflicting, and the Court found reason to question the credibility of some of each witness's testimony. After evaluating the testimony and exhibits, the Court makes the following findings of fact.[1]

In early 2005, the Gordons were looking to buy a vehicle and visited Good Deal Used Cars, a business owned and operated by Abouelhana. On March 21, 2005, Abouelhana sold Artrice Gordon a 1996 Audi. The purchase order and the security agreement listed the buyer as Homesavers USA with Artrice Gordon

[1] The findings of fact contained in this memorandum reflect the Court's weighing of evidence, including consideration of the credibility of the witnesses. "In doing so, the court considered each witness's demeanor, the substance of the testimony, and the context in which the statements were made, recognizing that a transcript does not convey tone, attitude, body language or nuance of expression." *In re Parrish*, 326 B.R. 708, 711 (Bankr. N.D. Ohio 2005). Even if not specifically mentioned in this decision, the Court has considered the testimony of all the witnesses, as well as all exhibits admitted into evidence.

signing as president. The purchase order also included Artrice Gordon's date of birth and social security number to verify the identity of the purchaser. Artrice Gordon made a down payment of $4,000 and owed an additional $6,170.57 to be paid in six monthly installments. Artrice Gordon made two additional installment payments on the Audi: $900 on April 5, 2005, and $1,000 on June 10, 2005.

On June 1, 2005, the Gordons filed a joint Chapter 7 petition *pro se*. The Gordons, however, filed a creditor matrix that did not list Abouelhana or Good Deal Used Cars but instead listed "Used Cars Sales," with a street address different from Abouelhana's business address. Therefore, Abouelhana did not receive the bankruptcy court's notice of the Gordons' petition. Nor did Abouelhana receive notice of the amended schedules and statements filed on July 1 and August 2, 2005.

Abouelhana hired a company that repossessed the Audi on or about October 26, 2005. The parties gave conflicting testimony about whether Abouelhana knew about the bankruptcy prior to the repossession. The parties do not dispute that on October 28, 2005, Artrice Gordon visited Good Deal Used Cars and requested return of the Audi because of the pending bankruptcy. Later that same day, Stephen Angel, the Gordons' attorney, called Abouelhana and told her that the Audi was part of Artrice Gordon's bankruptcy estate and should be

returned. Mr. Angel followed up the phone call by mailing information about the bankruptcy to Abouelhana and again requesting return of the Audi. Abouelhana denied the turnover request and remains in possession of the Audi. Despite full knowledge of the Gordons' pending bankruptcy case since at least October 28, 2005, Abouelhana has never moved this Court for relief from stay under 11 U.S.C. § 362.

## PROCEDURAL HISTORY

On November 30, 2005, the debtors filed a motion for an order to show cause for violation of the automatic stay (Docket #41). On December 20, 2005, Abouelhana appeared at the hearing on the motion for an order to show cause but stated that her counsel was unable to appear. The Court agreed to adjourn the matter to the next day. In addition, on December 20, 2005, and on several other occasions, the Court specifically warned Abouelhana that she was proceeding at her own risk by not returning the Audi, which had been repossessed postpetition. At the adjourned hearing on December 21, 2005, Abouelhana again appeared without counsel, and the Court entered an order (Docket #43) upon Good Deal Used Cars to appear at an evidentiary hearing and show cause "why it should not be held in civil contempt of court and/or held liable for damages for violations of the automatic stay under 11 U.S.C. § 362." The show cause hearing was initially

set for January 12, 2006, but was adjourned and went forward, as detailed above, on January 31, 2006. The Court took the matter under advisement and is now ready to rule.

DISCUSSION

The filing of a bankruptcy petition gives rise to an automatic stay of "any act to obtain possession of property of the estate or of property from the estate or to exercise control over property of the estate." 11 U.S.C. § 362(a)(3). Former subsection 362(h) (now subsection (k) after the 2005 bankruptcy amendments) is applicable to this pre October 17, 2005, case and provides:

> An individual injured by any willful violation of a stay provided by this section shall recover actual damages, including costs and attorneys' fees, and, in appropriate circumstances, may recover punitive damages.

Under former subsection 362(h), the individual seeking damages has the burden of establishing by a preponderance of the evidence that (1) the actions taken were in violation of the automatic stay, (2) the violation was willful, and (3) the violation caused actual damages. *See Clayton v. King (In re Clayton)*, 235 B.R. 801, 806-07 & n.2 (Bankr. M.D.N.C. 1998); *see also In re Pawlowicz*, No. 03-36979, __ B.R. __, 2005 WL 3729394 (Bankr. N.D. Ohio Dec. 5, 2005); *Hampton v. Yam's Choice Plus Autos, Inc. (In re Hampton)*, 319 B.R. 163, 170-71 (Bankr. E.D. Ark. 2005).

*The Audi is Property of the Estate, so Abouelhana's Actions in Repossessing the Audi and Refusing to Return the Audi are Violations of the Automatic Stay*

The parties do not dispute that the postpetition repossession of a vehicle belonging to a bankruptcy estate and refusal to return the vehicle would be a violation of the automatic stay. *See, e.g.*, *In re Sharon*, 234 B.R. 676 (B.A.P. 6th Cir. 1999); *In re Lewis*, No. 04-25387, Docket #90 (Bankr. N.D. Ohio Oct. 14, 2005). The parties do dispute whether the Audi is property of the debtors' bankruptcy estate.

Property of the estate is defined broadly as "all legal or equitable interest of the debtor in property as of the commencement of the case." 11 U.S.C. § 541(a)(1). State law determines the nature and extent of a debtor's interest in property. *See Butner v. United States*, 440 U.S. 48, 55 (1979). Ohio law applies to the Audi that was purchased in Ohio and is titled and registered in Ohio. Under Ohio law, "[a] sole proprietorship has no legal identity separate from that of the individual who owns it. It may do business under a fictitious name if it chooses, but '[d]oing business under another name does not create an entity distinct from the person operating the business.' " *Patterson v. V & M Auto Body*, 63 Ohio St.3d 573, 574-75, 589 N.E.2d 1306, 1308 (1992) (quoting *Duval v. Midwest Auto City, Inc.*, 425 F. Supp. 1381, 1387 (D. Neb. 1977)); *accord In re*

*Christenberry*, No. 04-36484, __ B.R. __, 2005 WL 3693203, at *2-3 (Bankr. E.D. Tenn. Dec. 13, 2005) (same applying Tennessee law); *In re Altchek*, 124 B.R. 944, 956 (Bankr. S.D.N.Y. 1991) ("[A] Chapter 11 sole proprietor estate includes all pre-petition property of the debtor, both individually and as a sole proprietor . . . ."). Therefore, if Homesavers USA is merely Artrice Gordon's sole proprietorship, then the business and all assets owned by the business, including the Audi, are owned by Artrice Gordon and became part of his estate upon the filing of his bankruptcy petition.

Artrice Gordon testified that Homesavers USA is merely his business name and that he has not incorporated the business. Abouelhana asks this Court to find that Homesavers USA is not a sole proprietorship but is something different. She argues that Homesavers USA is its own legal entity with ownership of the Audi separate from Artrice Gordon and his bankruptcy estate. Abouelhana, however, has failed to produce any evidence or law to support her claims. She submitted an affidavit referring to a North Carolina entity "Homesavers USA, Inc.," but she offered no evidence that would link the North Carolina entity to Artrice Gordon or the 1996 Audi. In fact, none of the evidence before the Court suggests that Artrice Gordon ever referred to his business as incorporated. The vehicle title, sale documents, and registration do not describe Homesavers USA as a separate

corporation but merely link Artrice Gordon and Homesavers USA. During cross-examination, Abouelhana conceded that Artrice Gordon was "more or less" the purchaser of the Audi.

This Court finds by a preponderance of the evidence that Artrice Gordon was a sole proprietor doing business as Homesavers USA; thus, under Ohio law, this sole proprietorship was not legally distinct from Artrice Gordon, and all property owned by the business was also owned by Artrice Gordon. Under 28 U.S.C. § 541, the Audi is property of Artrice Gordon's bankruptcy estate.

*Abouelhana Willfully Violated the Automatic Stay by Refusing to Return the Audi after Receiving Notice on October 28, 2005, of the Pending Bankruptcy*

Abouelhana violated the automatic stay that arose on the date of the bankruptcy filing, June 1, 2005, when she repossessed the Audi on October 26, 2005, and she remains in violation of the stay by continuing to hold the Audi. Pursuant to former subsection 362(h), Abouelhana is liable for actual damages caused by any "willful" violations of the automatic stay. "As used in § 362(h), 'willful,' unlike many other contexts, does not require any specific intent." *In re Bivens*, 324 B.R. 39, 42 (Bankr. N.D. Ohio 2004); *see In re Sharon*, 234 B.R. at 687-88 ("A violation of the automatic stay can be willful when the creditor knew of the stay and violated the stay by an intentional act."); *see also Johnston Envtl.*



05-17767-aih Doc 49 FILED 02/08/06 ENTERED 02/08/06 13:23:58 Page 8 of 13

*Corp. v. Knight (In re Goodman)*, 991 F.2d 613, 618 (9th Cir. 1993); *Lansdale Family Rests., Inc. v. Weis Food Serv. (In re Lansdale Family Rests., Inc.)*, 977 F.2d 826, 829 (3d Cir. 1992).

"[A creditor's] belief that withholding possession would not violate the stay does not preclude [a] finding that the intentional act of withholding possession was 'willful.' " *In re Sharon*, 234 B.R. at 687-88; *see also Crysen/Montenay Energy Co. v. Esselen Assocs., Inc. (In re Crysen/Montenay Energy Co.)*, 902 F.2d 1098, 1104-05 (2d Cir. 1990); *In re Atlantic Business & Cmty. Corp.*, 901 F.2d 325, 329 (3d Cir. 1990); *cf. Diviney v. NationsBank of Texas, N.A. (In re Diviney)*, 225 B.R. 762, 774 (B.A.P. 10th Cir. 1998) (explaining why term "willful" has different meaning in former subsection 362(h) than in subsection 523(a)(6)); *In re Robinson*, 228 B.R. 75, 80-81 n.5 (Bankr. E.D.N.Y. 1998) (same).

The Court finds by a preponderance of the evidence that Abouelhana has known since March 21, 2005, that the purchaser of the Audi was Artrice Gordon, doing business as "Homesavers USA." In fact, Abouelhana should be well-aware of operating an unincorporated business under a different name since this is what she is currently doing with her own unincorporated business – Good Deal Used Cars. Morever, even if Abouelhana believed in good faith that the Audi was not property of Artrice Gordon's bankruptcy estate, such belief would not preclude a

finding of willful violation of the automatic stay. The important question is when did Abouelhana get notice that the Audi was claimed to be property of Artrice Gordon's bankruptcy estate. As noted in the findings of fact, the parties gave conflicting testimony regarding when notice of the bankruptcy was first received.

By a proponderance of the evidence, the Court finds that Abouelhana only became aware of the Gordons' bankruptcy on October 28, 2006, when Artrice Gordon and Mr. Angel spoke to Abouelhana and sent her documentation of the bankruptcy. Thus, Abouelhana was not aware of the bankruptcy until after she had repossessed the Audi. In reaching this conclusion, the Court discounts the Gordons' testimony that they gave Abouelhana notice of the bankruptcy on multiple occasions prior to the repossession. The Gordons' own inaccuracies and/or omissions were responsible for Abouelhana not receiving notice from the Court of the Gordons' bankruptcy case. Even though the Gordons had previously worked as bankruptcy petition preparers, they made no effort to verify that they had Good Deal Used Cars' correct address, they filed inaccurate bankruptcy schedules and statements, they failed to disclose a prior bankruptcy case in another jurisdiction, and Wanda Gordon admitted to signing her husband's name to a filing made under penalty of perjury. The Gordons also gave evasive answers on cross-examination.

Abouelhana, doing business as Good Deal Used Cars, willfully violated the automatic stay when she refused to return the Audi after Mr. Angel put her on notice of the pending bankruptcy. Thus, Abouelhana, doing business as Good Deal Used Cars, has been in willful violation of the stay since October 28, 2005.

*The Gordons are Entitled to Actual Damages Resulting from Abouelhana's Refusal to Return the Audi after October 28, 2005*

"An award of damages is mandatory under § 362(h) when a violation of the automatic stay is found to be 'willful.' " *In re Bivens*, 324 B.R. at 42; *see also In re Johnson,* 253 B.R. 857, 861 (Bankr. S.D. Ohio 2000). Costs and attorney fees are regularly awarded as actual damages from violations of the stay. *Cf. United States v. Harchar*, 331 B.R. 720 (N.D. Ohio 2005) (finding actual damages for willful violation of stay does not include intangible damages from emotional distress). A damage award must be supported by the evidence, rather than speculation and conjecture. *Archer v. Macomb County Bank,* 853 F.2d 497, 499 (6th Cir. 1988).

Abouelhana, doing business as Good Deal Used Cars, willfully violated the stay when she refused to return the Audi after receiving notice on October 28, 2005, of the debtors' pending bankruptcy case. The Gordons are entitled to "actual damages, including costs and attorneys' fees," resulting from

Abouelhana's refusal to return the Audi after October 28, 2005. Any damages caused by the initial repossession on October 26, 2005, are not recoverable because Abouelhana lacked notice of the bankruptcy and therefore was not acting willfully to violate the stay. Provided the Audi is returned promptly, the Court will decline to award punitive damages. *See id.* at 500 (finding punitive damages appropriate if actual damage amount would not deter the creditor's "deliberate and repeated violations of the automatic stay"); *In re Bivens*, 324 B.R. at 42 ("[T]he imposition of punitive damages is not an action to be taken lightly, and . . . this Court has always exercised great restraint in making such an award. . . . [C]ases in which punitive damages have been awarded involve conduct that is egregious, vindictive, or intentionally malicious.").

It is unclear to the Court what actual damages, if any, exist beyond the reasonable costs and attorneys' fees for the services of Mr. Angel. The Gordons have until February 24, 2006, to file an affidavit or declaration under penalty of perjury detailing any actual damages, including costs and attorneys' fees, resulting from Abouelhana's refusal to return the Audi after October 28, 2005. Abouelhana will then have until March 6, 2006, to file any opposition. The Court will then take the matter under advisement in order to issue a final order awarding damages under former subsection 362(h).

## CONCLUSION

For the foregoing reasons, Abouelhana, doing business as Good Deal Used Cars, willfully violated the stay, and the Gordons are entitled to actual damages, including costs and attorney fees, resulting from Abouelhana's refusal to return the Audi after October 28, 2005. Provided the Audi is returned promptly after receipt of this memorandum of opinion and order, the Court will decline to award punitive damages. The Gordons have until February 24, 2006, to file an affidavit or declaration under penalty of perjury detailing any actual damages, including costs and attorneys' fees, resulting from Abouelhana's refusal to return the Audi after October 28, 2005. Abouelhana will then have until March 6, 2006, to file any opposition.

IT IS SO ORDERED.

Arthur I. Harris
United States Bankruptcy Judge